Opinion
FOSTER, P. J.
In a prosecution based on two consolidated misdemeanor complaints defendants Richard Michael Morone and Daniel Farmer were charged with conducting a health club without a license in violation of Los Angeles County Ordinance No. 5869, article 20, section 773,[1] and defendant Darryl Haynes was charged with selling alcoholic beverages without a *Supp. 21 license in violation of Business and Professions Code section 23300.[2] After a court trial,[3] defendants were found guilty as charged.
The settled statement reflects the following. It was stipulated between the People and defendants that if the ordinance were constitutional and applicable to the subject business, defendants were guilty as charged. After that stipulation the People rested. Defendants then argued that the nature-of their business was such that, if the ordinance were applied to them, it would be unconstitutional and, in any event the board of supervisors did not intend the ordinance to apply to their business.
The uncontroverted evidence reveals that the business at issue is a variant of the concept popularly known as “Plato’s Retreat,” a business in which patrons are provided with a series of connected rooms so that they might assemble to promote, discuss and practice an activity commonly known as “swinging,” which, in this context, is the philosophy of free heterosexual activity between temporary, uncommitted partners of the opposite sex with full disclosure of such activity to a partner with whom there is a committed, on-going relationship. The theory is that “swinging” tends to promote natural, polygamous urges without threat to the longterm relationship.
The business in question is operated for profit and an entry fee is charged. At the time of the alleged violations, it provided a large, communal type, indoor Jacuzzi, showers, and saunas, as well as linens, towels, mattresses, and other bedding.
 On appeal, defendants challenge their convictions on the grounds that: (1) the guarantees of the First Amendment to the United States Constitution and article I, section 2, of the California Constitution exempt the subject business from the requirement of a health club license; and (2) no such license was required since the business did not fall within the definition of a “health club” under the ordinance.[4]
*Supp. 22 We reject the contention that the operation of the business in question is a constitutionally protected activity.[5] The First Amendment, which protects both the freedom of speech and the freedom of association (People v. Katrinak (1982) 136 Cal.App.3d 145, 151 [185 Cal.Rptr. 869]), does not embrace purely physical activity. (Sunset Amusement Co. v. Board of Police Commissioners (1972) 7 Cal.3d 64, 74 [101 Cal.Rptr. 768, 496 P.2d 840].) “Swinging,” which is a “free heterosexual activity,” therefore does not per se qualify for First Amendment protection. To hold otherwise would require us to adopt the already discredited “view that an apparently limitless variety of conduct can be labeled ‘speech’ whenever the person engaging in the conduct intends thereby to express an idea.” (United States v. O’Brien (1968) 391 U.S. 367, 376 [20 L.Ed.2d 672, 679, 88 S.Ct. 1673].) The “communal” nature of the activity adds nothing, because it is the “ ‘freedom to engage in association for the advancement of beliefs and ideas. . . . [Citations.]”’ (Sunset Amusement Co., supra, at p. 74), not the mere assemblage of persons, which is embraced by the First Amendment. (Id. at pp. 74-75; accord, People v. Katrinak, supra, at p. 152.)
There is no question that First Amendment protections come into play to the extent that the patrons might “discuss” the “philosophy” of “swinging.” However, “when ‘speech’ and ‘nonspeech’ elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.” (United States v. O’Brien, supra, 391 U.S. 367, 376-377 [20 L.Ed.2d 672, 679-680].) Here, a nonspeech element appears in the use of a jacuzzi, showers, and saunas, as well as towels and bedding, at a commercial establishment.
“[A] governmental regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.” (United States v. O’Brien, supra, 391 U.S. 367, 377 [20 L.Ed.2d 672, 680]; accord, People v. Perrine (1975) 47 Cal.App.3d 252, 260 [120 Cal.Rptr. 640].)
The health club licensing requirement and the concomitant regulations meet all of these tests. “Under the California Constitution, a county has broad authority to ‘make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with *Supp. 23 general laws.’ [Citations.]” (People v. Katrinak, supra, 136 Cal.App.3d 145, 150.) Moreover, “[t]he constitutional power of the county to regulate and license for purposes of health and safety [an important governmental concern] is unquestioned.” (Ibid.) Those purposes are self-evident from our review of those provisions of the Code regulating, e.g., bathing, dressing, and toilet facilities (§ 7.47.060), water and towels (§ 7.47.070), and liability insurance regarding personal injury (§ 7.47.090). The health club licensing requirement is merely the means through which the county oversees compliance with such matters, and its purpose is manifestly unrelated to the suppression of free speech.
 This licensing requirement does “not at all restrict First Amendment freedoms” (People v. Perrine, supra, 47 Cal.App.3d 252, 260) “since it is the commercial aspects of a business enterprise with which we are herein concerned” (Robins v. County of Los Angeles (1966) 248 Cal.App.2d 1, 11 [56 Cal.Rptr. 853]).[6] At best, that requirement would have a negligible and wholly incidental effect on such freedoms since the use of a Jacuzzi, showers, etc., in a business establishment, as a matter of law and logic, does not constitute the sine qua non or integral part of a philosophical discussion on “swinging.” (See Sunset Amusement Co. v. Board of Police Commissioners, supra, 7 Cal.3d 64, 74-75; People v. Katrinak, supra, 136 Cal.App.3d 145, 154.)
Also without merit is defendants’ contention that the health club licensing requirement was not intended to apply to their business. They claim that this intent is plain from the fact that a health club, whose dictionary definition is a public gymnasium, sports facility, public steam room, etc., is not the type of place to hold a “swing” party. Moreover, they urge that the fact that the showers, sauna, and Jacuzzi facilities are merely incidental to their “swing” party business shows that their facility cannot be characterized as promoting health. They also assert that the application of health club regulations to their business would lead to absurd results.
Defendants’ reliance on a dictionary definition of a “health club” is inappropriate in this instance since the Code itself defines that term. (Cf. People v. Heffner (1977) 70 Cal.App.3d 643, 647-651 [139 Cal.Rptr. 45].) Defendants’ business, which provided patrons at the time of the violations at issue with a Jacuzzi, sauna, and showers, clearly falls within the Code’s definition, which is: “[a]s used in this chapter, a ‘health club’ means any *Supp. 24 place which has therein a swimming pool, soaking facility such as a spa, tub or any other device in which a person can soak, a steamroom, a sauna or bathing place, including shower bath.” (§ 7.47.010, subd. (a).) It does not fit within any of the section’s enumerated exceptions.[7]
Nor is the business excluded from this definition because the water-related services provided are merely incidental to the business’ primary purpose of holding “swing” parties. The Code defines a “business” as including “every activity for which this title requires a license, whether such activity is a business or occupation or neither.” (§ 7.02.110; see also, §§ 7.04.010, 7.04.020 & 7.02.030.)
Finally, we reject defendants’ argument, which is both attenuated and without substance, that the application of such health club regulatory measures would lead to absurd results.[8]
The judgment is affirmed.
Bernstein, J., and Reese, J., concurred.

That ordinance was subsequently codified as part of the Los Angeles County Code, which hereafter shall be referred to generally as the Code and specifically by section number only, unless otherwise indicated.

In complaint number M67257 Marone and Farmer were charged with one count of violating section 773 on September 22, 1981. In complaint number M67277 Marone was charged with one count of violating section 773 and Haynes was charged with one count of violating Business and Professions Code section 23300, both arising allegedly from incidents on October 11, 1981. On February 8, 1982, the two matters were consolidated.

In a pretrial memorandum decision the court rejected defendants’ contention that the practice of “swinging” as embodied in their business was exempt from the health club license requirement as an activity protected by the First Amendment to the United States Constitution, reasoning that the requirement of such a license is no more a burden on free speech than requiring the driver of a newspaper truck to have a driver’s license. It also denied, as cumulative, the defense motion to reopen for evidence showing that the appliances in question, showers, etc., were for communal, not individual use.

These contentions have no application to Haynes, who was not charged nor convicted of failing to obtain a health club license.

Our discussion of the First Amendment guarantees encompasses the liberty of speech guarantees contained in article I, section 2, subdivision (a) of the California Constitution.

Inasmuch as we have determined that the operation of the licensing ordinance involves only an ordinary commercial enterprise rather than impinging upon the exercise of First Amendment activities, we do not subject the ordinance to strict scrutiny. (Cf. Burton v. Municipal Court (1968) 68 Cal.2d 684 [68 Cal.Rptr. 721, 441 P.2d 281].)

“A ‘health club,’ as defined in this chapter, does not include: 1. A private residence, condominium, townhouse, trailer park, or apartment complex; 2. A place where any treatment is administered in the course of the practice of any healing art or profession under the provisions of the Business and Professions Code or any other statute of the state of California; or 3. A place of employment where bathing facilities for the use of employees are required by law. . . .” (§ 7.47.010, subd. (b).)

Defendants’ claims that any application by them for a health club license would be a futile act, and failure to obtain a license is thus excusable are matters outside the scope of this appeal. (See People v. Katrinak, supra, 136 Cal.App.3d 145, 158.)